21-10849 WS v. Dallas Indep Sch Dist The district court began with an assessment of what the means and ends are with regards to the statutes in play in this case. And that is absolutely appropriate under FRIE. FRIE starts with that sort of analysis. Let's look at the means and ends of the statute. Well, the means and ends with regards to the Americans with Disabilities Act and the Rehabilitation Act are, as Justice Kagan articulated in FRIE, to root out discrimination against disabled individuals. In other words, these are statutes that are designed to quash bad acts, if you will, and or to create an environment which is accessible to those who have disabilities. And I want perhaps a better way to phrase it for those who are on some species of spectrum of ability. I mean, we're all, to some extent, functionally impaired in regards to... Nobody's perfect is the best way to put it. But obviously there's a spectrum of disability. The ADA and the Rehab Act are designed to afford and accommodate and provide accessibility to people who are disabled, obviously. The Individuals with Disabilities in Education Act has a different thrust. Rather than prescribing, for example, architectural feature compliance or, you know, accessibility modalities, those certainly might have some interplay, the IDEA focuses on the free and appropriate public education of disabled individuals. The acronym FAPE is frequently employed. I find it a distasteful acronym, but that's what we have to use. So the district court, in its determination, applying the FRIE analysis, decided that our claim arose essentially purely because we were complaining about some failure of the school district to provide a free and appropriate public education. Now, the facts of our case don't match that analysis. The facts of our case are relatively straightforward and they really turn on accessibility. Our child, obviously not my child, but the child at issue here, suffers debilitating handicaps, one of which involves a propensity to attempt to ingest objects that are in relatively close proximity. I mean, he would, for example, pick this up and attempt... probably not this, it's too large, but something that was small enough to put in his mouth. He'd put it in his mouth and attempt to ingest it. Now, this is a disabling characteristic that he suffers as a function or as a result of his overall disabilities. Now, it's analogous or similar to a known syndrome called Prader-Willi syndrome. Now, it's not... he doesn't suffer from Prader-Willi syndrome, but we'll get to why that's important in a few minutes. But he suffers from this disability. So one of the accommodations that his mother, who is the next friend in this case, asked the school district to make was to ensure that the environment in which he was in at any given time was free of small objects that might tend to create that propensity to put them into his mouth and start eating them or attempt to ingest them. And numerous communications went back and forth between Mom and the school district in this regard. And what's important there is that those communications were not simply addressed to, for want of a better term, the folks at the lower tier of the school district. In other words, you know, supply teachers or assistants or people just on the shop floor or the coalface, for want of a better term, of the educational environment. These requests went all the way up to the principal of the school. And when we first filed our complaint, the defendant... We hadn't made those allegations quite as expressed in the initial complaint concerning the tiered structure, if you will, of the notice, for want of a better term. So we filed a second complaint, which identified with more particularity every single individual that was noticed. I think at some stage we reached the conclusion that nine individuals with sufficient authority were noticed by our complainant of this propensity. And the reason the accommodation was requested was let's make sure that, for example, small objects that would easily be placed in this child's mouth are moved up to a level where he can't reach, something like that, some kind of modification to the environment that the child found himself in so as to not create a danger to his health through a choking risk. The child also had a choking risk bracelet on that he wore through the course of his time at the school, or was supposed to wear through this course of time at school. Ultimately what happened is the child suffered a significant choking injury that resulted in two hospitalizations. On the second hospitalization, or maybe after the first, it was revealed that he'd ingested six gloves that were used to change diapers in the schoolroom, and these obviously caused significant harm. And he suffered... He incurred medical expenses as a result of that harm. I mean, he incurred medical expenses and he incurred pain and suffering and mental anguish standard personal injury tort-type damages. And that is, in some sense, what we sought through our complaint under the ADA and the Rehabilitation Act. Never mention any complaint of the Individuals, Disabilities and Education Act. Never mention any complaint of a failure to provide a free and appropriate public education. Never a complaint directly of some failing in the Individualized Education Plan, or the IEP, which is a creature of the IDEA. Now, the district court determined that because we had employed terminology in our complaint that smacked of IDEA and or free and appropriate public education, that the complaint somehow sounded, or the gravamen of the complaint, to use the appropriate language from Frye, sounded as one arising under the IDEA and thus was subject to administrative exhaustion. But the district court got that very wrong, in our estimation. And I've handed the court a couple of bench... ..exhibits, if you will. And the first one specifically juxtaposes the language from Frye with the language that the district court used in its analysis of our complaint. Frye says the use or non-use of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes or alternatively omits the precise words FAPE or IEP. The district court said usage of IDEA language in the complaint is a strong indicator that denial of FAPE is at the heart of the matter. That's a clear misstatement of what Frye says. It's hard for us to gauge where the district court got that from because it's just a diametrically opposed view. And then, having said that, with some reference to some other stuff concerning means and ends, the court ultimately said the court's analysis could stop here. So having made this determination that somehow the language in the complaint should inform its analysis dispositively, the court said that's where we're going to stop. We need go no further. The court did go further, and I'll move into that shortly. But clearly, that's just not accurate with regards to Frye. It's a basic misstatement of what Frye stands for. The other thing that the district court sidestepped, or perhaps the better word is the district court omitted with regards to its Frye analysis, is to look carefully at the history of the proceedings. Now, it's common in IDEA claims for there to be some species of underlying procedural history with regard to the exhaustion of administrative remedies. And this court has seen that in a number of cases. Certainly in Heston, I think, is one of the cases that's cited in some depth by the defence, and indeed the district court referenced it. Heston is one case where there was administrative exhaustion pursued, though perhaps not completed, and Heston's an unusual case because there was a settlement at the administrative level for a $50,000 educational reimbursement of some species for that child. And I don't want to sidetrack myself too far, but the bottom line is that the Frye opinion says prior pursuit of an administrative remedy is strong evidence of an IDEA claim, or a claim for a fate. I don't want to sidetrack you. I know you want to talk about the district court's use of the hypotheticals, but I do want you to keep in mind that as I read Frye and this particular section of the IDEA, the basic legal question in front of us is obviously the IDEA does not, the law says, it does not restrict or limit the rights, procedures, and remedies available under the Constitution, ADA, or the Rehab Act. That's clear. We're talking about the clause that says before the filing of a civil action under such laws, seeking relief that is also available under the IDEA, you have to go through the exhaustion procedures. So the question then is how are we to say whether this civil action seeks relief that is also available under the IDEA? I don't think that this civil action does seek relief. Tell me why. Just tell me why it's not seeking relief. Because the relief available under the IDEA primarily is a species of prospective relief. When you go to the IDEA administrative hearing officer under the Texas Education Agency or under any education agency, depending on which state you're in, you're going in there and saying I'm complaining about my IEP or I'm complaining about a decision of an ARD or I need some kind of prospective relief. I want you to change something now that will impact my child's educational absorption, for want of a better term, my child's education is the best way to put it, in the future. I want maybe some species of compensatory award so that I can go pay for my child to go to a private school that is better suited. I agree with that. And I see my time is about to... That's fine. We handle IDEA cases, I recognize. You know the language I speak. Yeah, we know all the acronyms. What is the difference in the relief that you're seeking here? Well, in this case, the compensatory award we're seeking is money damages related to the medical expenses. But hasn't our court, correct me if I'm wrong, because I need to review the precedents, but hasn't our court said that the mere fact that you're seeking compensatory damages doesn't take you out of the... That's not enough. But the fact that we're not seeking some species of prospective relief related to education does. Okay, so no prospective relief with respect to education. Not at all. We didn't plead for anything like, you know, we want compensatory education, we want money for the value of education lost, we want some kind of speculative measure of damages based on, you know, the loss of value to us of that educational loss. We haven't pledged for anything like that. This is really, in some sense, the damages we're seeking are traditionally damages available in a tort claim, in a personal injury type tort claim. Now, of course, we're also seeking damages that are available under the ADA and the Rehab Act, which include, I think, attorneys' fees and costs and expenses associated with litigation, because these are civil rights statutes designed to incentivize attorneys to take them on with the prospect of recovery, even if there is no... contingent-type arrangements, for want of a better term. So, and that was a digression. No, no, I understand what you're saying. That's helpful, and you just have a few seconds left, but you will have time for rebuttal. I understand, but I hate to use rebuttal for what I'm not supposed to, so... Well, no, no, we understand. We'll give you some leeway. I'm sure the counsel opposite will talk about the hypothesis. And we've talked about prior pursuit. I think, you know, the Supreme Court clearly recognized that that would be some strong indication of an IDEA or a FAPE-type claim. There just wasn't... That just didn't exist here. I'm going to step back. Great. Well, you'll have time for rebuttal, and thank you for the argument. Thank you, Your Honour. Ms Bowen. May it please the Court. Good morning, my name is Diana Bowen, and today, with Taylor Montgomery, we represent the Dallas Independent School District. This is a case about the educational needs of a severely disabled student while at school, including his need for one-on-one supervision and his need for a safe learning environment, all of which are elements of a free, appropriate public education, or FAPE, under the IDEA. And as part of the IDEA, as the Court indicated, an appellant was required to exhaust admitted strength of remedies first, before filing suit under Section 504A of the IDEA for monetary damages, not to limit the rights of the disabled student, but to ensure the child's educational needs are addressed first. Now, I want to address first the appellant's misunderstanding regarding the FAPE, what FAPE encompasses. FAPE does not only address academic needs to address specific learning disabilities, as the appellant seems to suggest in the exhibits that Apolli just actually provided moments ago. Looking at the statute itself, the purpose of the IDEA, I quote, is to ensure that all children with disabilities have available to them a free, appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living. To meet this purpose, schools are required to offer a wide variety of special education and related services and supplementary supports to address not academics, but the child's unique functional needs to help the child benefit from education. This includes the one-on-one supervision or support needed, personal care services for diapering, feeding, and getting around the school environment, supports and services to handle behavioral needs, health care plans to handle disability needs like choking risks and seizures, occupational therapy to address the sensory needs that this child needed, and even music therapy and horseback riding. The primary vehicle to provide these supports and services is the individualized educational plan. I think what Mr. Winokur would say in response to that, because that was my last question to him, was that, well, we're not seeking any of that relief in this lawsuit. Understand, and as the court specifically has addressed, they have already established that seeking just economic damages or money damages or other relief not available under the I.D. does not excuse exhaustion. If you look at Logan v. Morris Jeff Community School, which is a Fifth Circuit case, as well as Heston v. Austin ISD, an appellant cannot avoid exhaustion of FAPE-related claims by including damages, just including damages for money. The I.D.A.'s exhaustion requirement applies to plaintiffs who seek damages, and the court should focus on the conduct that plaintiff complains about instead of the relief being sought to determine... That's what I was going to ask you. I understand Frye to say we have to look at the gravamen of the complaint. Exactly. So what should, in your view, what should we look to? So in our review, the district court in this case specifically looked at the essence of the complaint, the gravamen, and they first looked at the actual complaint. So if you're looking at the facts of this complaint, Yes, it included a request for a safety plan to remove small items, repeated requests for one-on-one aid and close supervision at all times throughout the school day, and an educational placement to address his disability-related sensory needs of putting items in his mouth. All of these, the parent, if you look at all the facts alleged in the record 58 to 59, to 60, it talks about the need for these things to be in the individualized education plan. So if you look at the first act, 58 to 59, she requested the safety plan be in his IEP. If you look at record site 59, she requested placement of enrolling the student in an activities of daily living classroom at a different school. That's about placement under FAPE. In record site 59 to 60, she refers to the response from the school district meaning that we need to do more training in this classroom. Training is a part of FAPE. If you look at record site 60, the parent is requesting at a May 17, 2019, ARD meeting, which an ARD in Texas is the IEP team meeting where you talk about FAPE. She's requesting that the student's disability, risk profile, and reasonable accommodations requested be included in the IEP. She's also at record site 61, she emails and she attends numerous meetings about her request for one-on-one supervision. So if you look at all the things that they're requesting in their own complaint, they were requesting that supervision and all of those things be part of this complaint. And it was those things that led, supposedly, that not having provided those supposed educational opportunities and accommodations that led to the injuries in this claim, and that is exactly what this complaint is asking for. So the district court looked at the means and ends of the IDA, and I would focus your attention on both Heston v. Osteville ISD, as well as GAV v. Brownsville, which is a Southern District of Texas case, where a severely disabled student who required multiple accommodations, just like the individual in this case, to keep him safe when he was using the restroom, performing activities that weren't educational activities, just being in the classroom environment. They alleged that the aide did not follow the safety protocols for that student. And in that case, the court found that the parent was required to exhaust because, I quote, the gravimum of plaintiff's claim, then, is that had BISD, the school district, provided adequate educational accommodations, including support services and properly trained staff, the alleged injury would not have occurred. J.V. received these education and supported services from BISD precisely because he was an enrolled student with a qualifying disability under the IDA, and the claims involved in the case, as in the present case here, receiving supportive services and assistance of a paraprofessional are only provided under the IDA as part of FAPE. So then the court looked at the hypotheticals of Frye, and I think that is a really telling test for this court to look at to see whether the relief requested is part of FAPE. So looking at the hypotheticals, could the student bring the same claim against another public facility like a public theatre or a library, and could an adult at the school bring the same claim? If no to those questions, then it is likely a FAPE claim that requires exhaustion. The district court held other public facilities are not required to provide an aid to supervise the student or to remove objects from the environment. Yes, he points to the pen, and the student in the case actually ingested a pen cap. So would an adult in this courtroom, if WS or an adult with WS's disability be required to remove all pens from the courtroom? That is not a likely or viable claim for an adult or a student in another public facility. The district court also held that appellant's claims stem from the obligations of a school in educating and supervising special education students. Paraprofessionals and supervision are part of the IDA. It's part of FAPE. Does this come down to, then, if we accept the basic argument here that a child with this kind of a problem, handicapped as this one is, basically has to have someone from the school district with him every minute that he's on campus? If that is what he needs... One-to-one, all day? If that is what the child needs for FAPE, absolutely. The district would be obligated to provide that support and services under the IDA. As they have done in numerous cases, which are supported in our brief, there are numerous cases, including Heston v. Austin ISD, this circuit's case, which said that a one-on-one aid that is required for the child to have access or benefit from their education is part of FAPE, is part of what we're required to do. And so because of that, they were required to exhaust their administrative randomities before bringing their suit. So just as a practical matter, the IDA does not exclude ADA or Rehabilitation Act claims. We're talking about an exhaustion requirement here. That is correct, Your Honor. As a practical matter, if a plaintiff in this situation is required to exhaust under IDA, what happens to the ADA and Rehab Act claims after exhaustion? So after exhaustion, after the experts in this area have a full record for the court to review, they can then bring those claims with the full record of the court from the administrative hearing, and they can also bring those claims in a court of law. Now, correct, I don't know, does the IDA allow these kind of compensatory damages that the plaintiffs are seeking in this case, or is that only available under other statutes? So, thank you, Your Honor, that was a great question. So the IDA relief that is available under the ADA, under the IDA, is, in fact, the hearing officer could have provided some of the same relief that the appellants are requesting. They could have provided the one-on-one supervision and required a smaller class size. I was asking about the compensatory damages aspect for the medical expenses. They could have been ordered to provide compensatory services, payment for private services, payment for trauma-related services related to the injury. I'm familiar with that under the IDA, but I was asking about, I was harmed, my child was harmed as a result of this failure to keep the objects away, and I have medical expenses. Does the IDA allow that? The IDA does not allow compensatory damages or punitive damages. So what happens to the plaintiff's claims for compensatory damages if exhaustion is required? So if after they have exhausted those, they can bring those claims under 504 or ADA if it meets the standards of 504 and ADA and assert those damages or mental damages. The point is, meet the educational needs of the child first and then come to court and sue about that. So as the, let's see, it was McMillan, I believe, the case, that basically said that IDA's exhaustion requirement applies to plaintiffs who seek damages. The court should focus on that conduct and then allow the damages claim to go forward so that the purposes of exhaustion are held. So the exhaustion extends the rights of the students. It puts the child first. Exhaustion does not preclude the student from seeking relief for damages or for violations of Section 504 or ADA. It just provides that the IDA claims must be tried first for very important reasons. Number one, it puts the child's needs first so that disputes can be promptly and efficiently resolved by experts so the child's educational needs can be met. The IDA's administrative procedures afford disabled students and their parents greater protections by promoting parental involvement. Parents are required to be members of the IEP team. They have numerous procedural safeguards under the IDA. There are strict timelines for school districts to respond to parental concerns. And as the Ninth Circuit, the Sixth Circuit, and more importantly, this circuit, have explained, this ensures that federal courts, generalists with no experience in the educational needs of handicapped students, are given the benefit of expert fact-finding by a state agency devoted to that very purpose. And it allows deference to those agency expertise in resolving these educational matters, and it presents the court with a more fully developed record and explores the full exploration of technical education terms. And as this court has said, it cannot be avoided by just looking for monetary damages. In your view, you talked about Heston. Is that... I'm trying to think of a case that has a FAPE in it, an IDA case that has a FAPE that would sort of encompass the kind of situation this child finds him or herself in. So the main cases that we would focus the court on would be both Heston v. Austin ISD, which in that case... Do you remember what kind of disability the child had? So in that case, the child had very significant disabilities. I believe they had ADHD, they had autism. There were lots of different types of disabilities. And they repeatedly complained, the parent repeatedly complained about the lack of supervision... That's what I was getting at. For a child that requires almost constant supervision. Constant supervision. And in that case, she requested that he receive more support and assistance to ensure his safety at school. So in following an incident where the student tried to hurt himself, the parents even requested a new aid, alleging that the current one was not adequately experienced, trained and supervised. Shortly thereafter, she alleges that the child was injured at school. Parents filed the 504-CAMES, and this court affirmed the dismissal for failure to exhaust because, I quote, the heart of the complaint around these claims is that AISD failed to provide proper educational accommodations and oversight in the form of an adequately trained and supervised teaching aid for AH, and the IDA requires exhaustion for claims that fundamentally concern a student's educational needs. Thus, the court has already held that a request for supervision by a trained aid and accommodations for a safe environment concern at bottom the provision of a free appropriate public education. Who funds this? I'm sorry? Who pays for this? I don't mean the school district. Who pays the school district? I mean, where do they get the money from to pay for all this? Absolutely. The IDA is funded by the federal government, Your Honor, and the funds come through the states to the school districts, and then the school districts do have to provide that funding, and sometimes they even have to use their general funding because they don't get a fully funded amount of money from the federal government, and so they have to pay for one-on-one supervision. I mean, the list goes on and on. There is a lot of supports that are required to be provided for a student with disabilities in an educational setting. And so looking at that, also another similar case I would point you to would be JV v. Brownsville. That was where... It's a district court case out of the Southern District of Texas, 2020. In that case, the student had multiple orthopedic impairments. They had multiple intellectual disabilities. He had multiple issues with having to be diapered and moved around, and he was in a very medically fragile situation. And the court in that said that the gravamen of plaintiff's claims is that BISD, the district, needed to provide adequate educational accommodations, and that was required to be exhausted before they could assert a claim for the injury related to that situation. As you can see by the case law, exhaustion does not only apply in cases where a student's learning disabilities are affected. It is a wide, encompassing statute that provides a lot of supports for our severely disabled students in our educational environment. And I think the Frye hypos are very... Appellant talks about looking just at the IDA language in the complaint. Yes, the district court looked at the IDA language in his complaint, but that was not before they had applied the Frye hypotheticals and looked at the actual essence of his complaint. Well, the argument, I think, is that the district court put too much weight on labels. And, you know, I know that Frye does caution against just being guided only by labels or terminology. Right. And, yes, Frye did, but, however, the district court did recognize this court's opinion after Frye in McMillan v. New Caney ISD, which held that while substance does trump labels and terms used in the complaint, a clue into whether FAPE is being asserted is the use of IDA language. It's just one factor they look at. And then the history of the proceedings, which the appellant also looked at, was it is, again, only one clue that a court may consider, and that, in fact, in this court, in Logan v. Morris Jeff Community School, a firm dismissal of claims for failure to exhaust when there was no history of prior pursuit of administrative remedies. So while prior pursuit may be a factor and certainly may be even a strong factor, according to Frye, there is cases where the court held exhaustion even when they didn't pursue due process. And, again, prior pursuit may be a factor, but the inverse is not true. If a litigant doesn't not follow the exhaustion procedures, it doesn't mean that the essence of their complaint is not FAPE. And just in closing, I've got a few seconds. It is only because of the requirements of FAPE that Dallas ISD had the responsibility to avoid the specific harms at issue in the case. It is why WS, not an adult in that setting or a child in another public facility, has a viable claim. It is because of FAPE. Thank you, counsel. Thank you. Mr. Winokur, you have some time for rebuttal. Thank you, Your Honors. Let me address... Again, let me ask you, your opponent cited in her presentation just now, and in the briefs, we talked about McMillan and Logan. It seems like we would have to leapfrog over those cases if we were to be inclined to give you relief here. How best do we get around those issues? The way you get around those is by recognizing that in both of those cases, the plea was under the IDEA. Direct express language in the complaint in Logan, they were seeking a declaratory judgment that there had been a violation of the IDEA. And in McMillan, similarly, a complaint was made I think three, four times. On the final draft, the plaintiff's attorney finally stripped out some of the IDEA language but left language relating to the ARD. There was a... I'm not going to remember the acronym, but when a child acts out to the point where he needs to be disciplined, there was a species of... There's an acronym for that under the IDEA. There was reference to the FAPE. In other words, the complaints... So you argue that those just don't apply, that we don't need to... I'm not suggesting they don't apply. I'm suggesting that they can be contrasted because in those complaints and in those situations, the complainants brought up the IDEA initially so they framed their arguments from the get-go as arising under the IDEA. And then they brought in Rehab Act claims or ADA claims later. And in Heston, it's a jarring situation because the Heston claimant had actually settled their claim with the school district during the administrative process for $50,000 attributed towards costs of supplemental education of some species and then brought the ADA and Rehab Act claims subsequent to that settlement. The district court determined that the exhaustion had not been achieved through the reaching of a settlement because the education hearing officer never issued findings of fact and conclusions of law. Thus, there was no true exhaustion. It's a little jarring, but I think the reality is that clearly Heston's distinguishable because there was a replete administrative record there. And that's, I think, a key in the analysis of Frye. Look at the procedural history. It provides strong evidence of the claim sounding as one for denial of a fape. And here, that just doesn't exist. What Pelley is trying to do is suggest that the factual recitations in the complaint stand for procedural exhaustion. They don't. Frye specifically says, don't do that. There's a footnote in Frye that says the terminology that we use in interacting with a school district on a regular basis if we're the parent of a disabled human being is going to implicate all this kind of verbiage. That we're going to say things like fape, we're going to say things like IEP, we're going to say things like ARD or these other sort of linguistic constructs and these initialisms that have been created around the IDEA or under it. Those are going to be used in daily discourse with the school district. Those are not procedural exhaustion processes. They're just language. It's like me saying I came to New Orleans from Shreveport and drove through Baton Rouge. I'm using Baton Rouge as an indicator of where I went on the map. I could call it Red Stick. It would mean the same thing, just in a different language. The point is that that's language. It's linguistic. It has no inherent legal weight. That's what Frye stands for, that proposition that the inherent legal weight is afforded to the procedural process if it has been begun and if it has been carried through. In fact, I think Justice Kagan specifically said this kind of language doesn't count, but if there's been some procedural process implicated prior, it's a strong factor. And in Heston, there certainly was. In Logan, the plaintiff specifically identified the IDEA in his pleadings seeking a declaration of some species from the court that the IDEA had been violated. And in Macmillan, there was also, I think, four complaints. Ultimately, the final fourth complaint was without IDEA language. I'm going to run out of time, but I wanted to briefly address the hypotheticals because I think Appelli sort of skirted over them in the same way that the district court did. And I think this is an intellectual exercise. This requires that the court grapple with what Frye says you need to do. It's not just, is there an access ramp in a public library or theatre? That's not the exercise the court is supposed to engage in. The court is supposed to grapple with the notion, can we hypothetically, in other words, in a realm of possibility, can we conceive of a situation where a plaintiff like this could bring a claim against a non-educational environment like a public library or a school, I mean, or maybe a... I think in our briefing we suggested a hospital or an incarceration facility, requesting that that facility make safe the environment for that plaintiff. Completely untethered from education. Completely untethered from education. That's step one of the hypothetical. If the answer to that is in the affirmative, then that gets you halfway there. Step two in the hypothetical, and I see that my time is up. May I continue? Step two of the hypothetical is, could someone, an adult, who's not in a school district or involved in the school environment for educational purposes, bring a claim like this against the school? And the argument is, yes, because imagine an adult who suffered from Crater-Willie syndrome, the syndrome I just identified. Imagine I came into this courtroom and I have Crater-Willie. I'm capable of articulating an oral argument, but I have Crater-Willie syndrome. I'm going to want to reach out and put things in my mouth. Would it be appropriate for me to request of the clerk that this podium be kept clear of small objects that could be put into my mouth? I mean, I think I illustrated at the beginning, I might try to put this pen in my mouth. Perhaps unlikely. I can't speak to that. But the bottom line is, it's a hypothetical. It is an intellectual exercise in hypothesising the possible. Maybe the plausible, but I'm not even sure that's necessary. I mean, I think plausibility is an important focus of the court's inquiry. But the district court here did none of that. It was lazy. It just said, you know, is it a public school? I beg your pardon, is it a library? Is it a theatre? Is it an access ramp? No. Done. And that's not what Fry asks the court to do. Well, counsel, thank you for a well-argued case, and we will certainly give this a close look. Thank you, Your Honor. Thank you, counsel. That ends our oral arguments today. The panel will stand in recess until tomorrow morning at 9 a.m.